FRANKLIN H. ALLISON *et al.*, Minors, by FRANKLIN H. ALLISON, Their Father and Next Friend, Plaintiffs-Appellants, *v.* CHARLES M HOWELL, Defendant-Appellee—(CHARLES M. HOWELL, Counterplaintiff, *v.* FRANKLIN H. ALLISON, Counterdefendant.)

(No. 73-9; )

Fifth District—September 26, 1974.

Wayne E. Armstrong and Jon D. Robinson, of Hull, Armstrong . & Campbell, of Decatur, for appellants.

John W. Fribley, of Fribley & Fribley, of Pana, for appellee.

PER CURIAM:

This was an action to recover damages incurred by the plaintiffs as a result of the alleged negligence of the defendant in operating his automobile. The defendant counterclaimed for damages. The jury rendered a verdict for defendant on plaintiffs' complaint and for plaintiffs on defendant's counterclaim. The court entered judgment on these verdicts. Appeal is taken from the jury's verdict on the plaintiffs' complaint and the judgment on that complaint. No questions are raised on the pleadings. The errors assigned concern the cross-examination of one of the witnesses and the closing argument of defense counsel.

On May 14, 1970 plaintiffs Franklin and Jane Allison and their children, Edward and Sheila, were traveling north on highway 51 south of Pana, Illinois. Defendant Charles Howell was traveling south on highway 51. At a point approximately one mile south of Pana and adjacent to the north entrance to the Hi-Way Tavern, which is located on the east side of the highway, a collision between these two automobiles occurred. Both vehicles involved in the collision were Buick four-door sedans. Plaintiff, Franklin Allison, was driving the Allison car; his wife, Jane, was in the front seat, the two children were in the rear seat. There were no passengers in the Howell car. Neither the defendant nor any of the plaintiffs remember details of the accident.

Defendant Howell testified that the plaintiffs' car was in the southbound lane (the defendant's lane) when it appeared on the ridge of the hill and that it was going about three times as fast as his own car or at a speed of approximately 55 miles per hour. He testified that he tried to avoid the oncoming car by veering onto the shoulder.

James R. LaGuartie, an eyewitness of the accident from his truck which was proceeding northward 1½ to 2 car lengths ahead of plaintiff's car, testified that as he reached a point opposite the north entrance of the Hi-Way Tavern, defendant's car, after passing a truck in front of the witness, came into the witness' lane causing him to think that the defendant was going to hit the rear of his truck. He further testified that before the collision the plaintiff's car was completely in the northbound lane and that when he saw the Howell car last—just before the impact—it was headed southeast and was across the center line to the east. He also testified on cross-examination that he smelled liquor on defendant's breath after the collision.

James Weakly testified for the plaintiff that he was in the Hi-Way Tavern about 2 weeks after the collision at which time the defendant came in and, in the course of the conversation about the accident, stated

that he was crossing the center line to drive into the tavern when he saw the appellant's car coming from the opposite direction and that he was unable to pull back into his own lane.

Witnesses for the defendant testified that he had not been drinking and that skid marks on the highway and the location of debris after the collision indicated that the collision occurred across the center line and on the defendant's side of the highway.

Plaintiff maintains that the evidence at the trial was in such sharp conflict that any substantial error or errors by defendant in the conduct of the trial had a significantly prejudicial effect on the jury in rendering its verdict for defendant, thus requiring reversal on appeal. Defendant concedes that the trial was not entirely free from error but argues that such errors were either minor and non-prejudicial or, even if prejudicial, not preserved by proper objection for appeal.

Plaintiff contends that the following constitute reversible error:

(1) During cross-examination of plaintiffs' witness, Weakly, defendant's counsel improperly asked if Weakly's business was bankrupt. Objection by plaintiffs' counsel was overruled. Weakly denied the bankruptcy.

(2) Defendant's counsel in summation implied that failure to use seat belts went to the question of liability and contributory negligence, which is an incorrect statement of relevant law. Plaintiffs' objection was overruled, motion for a mistrial denied, and the jury not instructed to disregard the statement.

(3) In his summation defendant's counsel, referring to witness LaGuartie, stated that he had a natural apprehension of long-haired hippy-type people and stated further that LaGuartie kept his hand over his mouth when he testified and that most judges or lawyers know when a witness does that he has something to hide. Plaintiffs' objection was overruled.

In view of the sharp conflict in testimony on the facts, we believe that the errors complained of were substantial and that they were prejudicial to the appellant.

■■ To support his contention that where a case is close on its facts and the jury might have decided either way, any substantial error which tips the scales in favor of the successful party calls for reversal, plaintiff cites a number of cases. *Both v. Nelson,* 31 Ill.2d 511, 202 N.E.2d 494, supports this view except that in *Both* the errors complained of concerned admission of evidence and the sufficiency of instructions. In *Edwards v. Hill-Thomas Lime & Cement Co.,* 378 Ill. 180, a case involving a collision between a truck and a van, two points were urged as error—namely that questions by plaintiff's counsel on voir dire related

to insurance coverage; and that in an instruction on contributory negligence the statement that plaintiff could not recover if he had wrongly placed himself in a dangerous situation, was not included in an instruction on contributory negligence. The court reversed and stated: "* * * the case was close on the facts and was one which the jury might have decided either way. In this situation it is important that the record be free from errors of law which may have affected the result." While the court did reverse for error in *Chicago, Burlington & Quincy R.R. Co. v. Warner*, 108 Ill. 538, and in *Crane Co. v. Hogan*, 228 Ill. 338, cases cited by the plaintiff, reversal in both cases was based on improper instructions to the jury. Reversal in *Duffy v. Cortesi*, 2 Ill.2d 511, was also based on erroneous instructions. However, in *Owen v. Willett Truck Leasing Corp.*, 61 Ill.App.2d 395, and in *Jacobson v. National Dairy Products Corp.*, 32 Ill.App.2d 37, reversible error consisted of counsel's conduct during the trial. In *Owen*, error consisted in the offering into evidence of exhibits known to be incompetent, the questioning of witnesses based on facts not in evidence, and in summation, the argument of facts not in evidence. In *Jacobson* the error consisted of counsel referring to a police court case in which the defendant had been exonerated, and in testifying and making improper comments in his summation. In *Morse v. Michaelson*, 101 Ill.App.2d 366, plaintiff sued for damage caused by the defendant's allegedly negligent architectural designs. Plaintiff's counsel asked whether at the time this job was done defendant had gone into bankruptcy. The objection by defense counsel was sustained, but the court failed to admonish the jury to disregard the question. A verdict for the plaintiff was reversed on appeal and the court, quoting from *Chicago, B & Q Ry. Co. v. Kelley* (8th Cir. 1934), 74 F.2d 80, 86, observed that questions which give a jury improper prejudicial information need not constitute reversible error if the trial judge has sustained all timely objections and properly admonished the jury. The court noted no such admonition. In the instant case the prejudice was even greater because the objection by plaintiffs' counsel was not sustained, and the jury received no admonition though witness Weakly stated that there had been no bankrupty. Nothing was done to dispel the prejudicial effect of this line of questioning.

Appellant cites as error remarks made by defense counsel in his summation:

> "One of the things which concerns me is the testimony about the glass in the face, a terrible thing to happen, and you will see that there was glass in the face of Mr. and Mrs. Allison. They hit the windshield, and this happens in the head-on collisions many, many times, but you will recall the question, I believe, and the

answers were 'Were you wearing securely fastened seatbelts, or did you have them in the car?' and I believe the answer was 'yes, we had them in the car, but we weren't wearing them.' I think you have to decide whether they were in the exercise of due care and caution for their own safety."

While defendant argues that this statement was made with respect only to mitigation of damages, it is obvious that the jury might not so understand it, and the settled rule in Illinois is that evidence of the use or nonuse of seatbelts is only admissible on the nature and extent of the injury sustained and not on the question of liability (*Mount v. Mc-Clellan*, 91 Ill.App.2d 1). Furthermore, this portion of counsel's summation misstated the evidence since neither of the plaintiffs, Mr. or Mrs. Allison, stated that they were not wearing their seatbelts. Mr. Allison stated that he did not believe that he and the passengers had seatbelts fastened, but he couldn't remember. Mrs. Allison testified that the car was equipped with seatbelts and that she did not recall whether they were wearing them. Plaintiffs' objection was not sustained, and their motion for the withdrawal of a juror was denied.

During the course of defense counsel's argument, he said in regard to the testimony of James Weakly:

"I don't think there is anyone in this case who has particularly misrepresented the truth, but I just can't other than, I just can't go along with James Weakly's testimony and I just can't go along with LaGaurtie's. You say LaGuartie came out here, number 1, let's take Weakly first. Weakly gets down here and says, 'I come in ten days or two weeks later and I sit there on the stool at the tavern and Charlie Howell walks up and said, no, I said, "Charlie, old boy, I didn't think I would ever see you again," and Charlie says, "Well, I'm lucky because it was my fault." He said, 'Well, he may not have used those words,' "I pulled in front of a car and the car came over the hill going real fast, and I couldn't get back in time." Do you think the average person would admit that he violated the law? No, we just don't do things like that. That is human nature. I don't know if he is beholden to this law firm that has represented him in two or three cases or if that is why he came in or because he was mad at him because he was against me in two or three cases, but I just can't accept the word of Jim Weakly on most anything, and on this, I can't at all. LaGuartie, you say he came all the way out here from California. Of course I'm 66 years old, I don't have any hair left anyway, I've got somewhat natural apprehension to long haired Hippy type people, that doesn't embarrass him whether he is telling the truth or not—"

At this point plaintiffs' counsel objected and moved for the withdrawal of a juror. His motion was denied. Speaking further of witness LaGuartie, defense counsel stated:

> "* * * This LaGuartie, the fellow when he did all his testifying he kept his hand over his mouth. I don't know why that is, but most judges or lawyers know, or feel, that a witness * * *."

At this point plaintiffs' counsel objected and his objection was overruled. Defense counsel then proceeded and stated:

> "If a person has a hand over his mouth we think he has got something to hide. I know I have—as you know, I don't hear too well, and I do a lot of good, I hope, on lip reading but you can't read a man's lips * * *."

Again plaintiffs' counsel objected and the court stated in response, "Reframe your argument. Your interpretation of the evidence and the comments as presented * * *."

■■■ In *Bulleri v. Chicago Transit Authority*, 41 Ill.App.2d 95, the appellate court found that the trial court had in effect converted counsel's misstatements into its own instructions by overruling objections and saying "You may proceed." The instant case is similar in that concededly improper remarks made by defendant's counsel, though not so numerous as in *Bulleri*, were objected to unsuccessfully by plaintiffs' counsel. While we agree with appellee, citing *Johnson v. Chicago Transit Authority*, 11 Ill.App.3d 16, that improper remarks by counsel are not grounds for reversal if the court took measures at the time to guard against any prejudicial effect, we find that in the instant case, with respect to the errors alleged, such measures were not taken and the court did not sustain objections or admonish the jury. Whether or not errors complained of actually prejudice the losing party or unduly affect the outcome of the case is a question unique in each case and must be decided on the facts and circumstances arising in that case. We do not feel that *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 118, and *Gatto v. Curtis*, 6 Ill. App.3d 714, supply any useful guidelines for the instant case. We believe that during the trial of this case there were errors substantially prejudicing the rights of plaintiffs to a fair trial.

The judgment is reversed and the cause remanded for a new trial.

Mr. JUSTICE EBERSPACHER took no part in the consideration or decision of this case.