JERRY REEDER *et al.*, d/b/a Maryland Fried Chicken, Plaintiffs-Appellants, *v.* OLD OAK TOWN CENTER, a/k/a Old Oak General Partnership, *et al.*, Defendants-Appellees.

Third District   No. 3—83—0509

Opinion filed June 14, 1984.

STOUDER, J., dissenting.

Alan R. Bruggeman, of Condon & Bruggeman, of New Lenox, for appellants.

Patrick J. Custardo, of Chicago, for appellee Old Oak Town Center.

D. Kendall Griffith, Todd R. Hogan, and John R. Williamson, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Alexander Lumber Co.

John J. McGarry, of Stefanich, McGarry & Wols., Ltd., of Joliet, for appellee James B. Clarage & Associates.

James R. Fabrizio, of Garrison, Fabrizio & Hanson, of Joliet, for appellee Pasch & Sons Construction Co.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiffs, Jerry and Carol Reeder, operators of a Maryland Fried Chicken restaurant in Homer Township of Will County, Illinois, brought suit in the circuit court of Will County seeking to recover from numerous defendants for economic damages to their restaurant business. The circuit court of Will County, in reliance on *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, dismissed all but one of the actions filed by the plaintiffs. The final action, one in constructive eviction, was tried in the Will County court and resulted in a directed verdict being entered for the defendant Old Oak General Partnership. The plaintiffs, Jerry and Carol Reeder, appeal the orders of the circuit court of Will County, urging that the circuit court's decisions were contrary to law.

The Maryland Fried Chicken restaurant operated by the plaintiffs was located in a detached part of the Old Oak Town Center, a new shopping center located at 143rd Street and Golden Oak Drive. The plaintiffs leased the restaurant space for an initial period of five years followed by successive options to renew for five years per option. The lease was dated March 7, 1981, and the plaintiffs took possession of the premises and began operating their business in June of 1981.

The leased building was constructed with the use of fir and pine posts which were treated with a preservative containing 5% pentachlorephenol. These posts were used in construction so that they were visible and exposed on the interior of the restaurant. According to the testimony submitted as a part of plaintiffs' case, the treated beams gave off an offensive odor smelling like insecticide. Further, the pentachlorephenol leaked out of the wood, discolored the beams, and dripped onto the floor and tables. Attempts were made to correct this problem by washing the beams with a high pressure pump and bleach and by sealing the beams with polyurethane paint, but to no avail.

Again, according to plaintiffs' evidence, many complaints were received concerning the offensive odor which permeated the restaurant. This led to the plaintiffs' decision to close the restaurant in January of 1982, just six months after opening.

The plaintiffs responded two months later with a lawsuit filed in the circuit court of Will County, in which they alleged that the chemical treatment of the beams caused the emission of an obnoxious odor which rendered the rented space totally unsuitable for use as a restaurant. The complaint named as defendants Old Oak Town Center, the landlord; James B. Clarage & Associates, the architect; Pasch & Sons Construction Company, the builder; and Alexander Lumber Company, the material supplier. The damages for which the plaintiffs sought recovery were economic damages, that is, lost profits.

The actions against the architect and the builder were based upon a negligence theory. Both of these actions were dismissed in reliance on *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, a case which denies recovery for economic loss in certain actions sounding in tort. Negligence theories against the landlord and the material supplier were similarly dismissed. Two additional actions against the material supplier, one based on a theory of strict liability and the other on the theory of warranty of fitness for a particular purpose, were also dismissed, the first mentioned because of the rule in the *Moorman* case and the second mentioned because the circuit court found a lack of privity between the plaintiffs and the material supplier. In each case, where the plaintiffs' action was dismissed, the circuit court granted leave to amend the pleadings, an option the plaintiffs failed to exercise. The court denied the defendants' request to make the orders of dismissal final and appealable. Subsequently, at the close of plaintiffs' case, the circuit court directed verdicts for the builder and the material supplier based on the dismissal order previously entered.

One action, a single count against the landlord based on the theory of constructive eviction, was tried before a Will County jury. At the same time, the defendant landlord presented a counterclaim for unpaid rent. At the conclusion of the case, the circuit court directed a verdict for the landlord on the constructive eviction issue, holding that the damages proved by the plaintiffs were too speculative. The counterclaim for unpaid rent was submitted to the jury, which rendered a verdict for the plaintiffs, based on their affirmative defense of constructive eviction to the counterclaim for rent.

A post-trial motion filed by the plaintiffs was denied on July 8, 1983. A timely notice of appeal was filed on August 4, 1983. This no-

tice of appeal expressly specified that relief was sought from an order of the trial court entered on February 25, 1983, dismissing certain defendants, from certain orders entered during the trial of the case against the remaining defendant, and from the denial of the post-trial motion entered by the court on July 8, 1983. No relief was sought from an order of the trial court dated April 13, 1983, which dismissed the action against the defendant architect.

Leave to file an amended notice of appeal was sought in this court by the plaintiffs. That leave was granted over the objections of the defendant architect, and an amended notice of appeal was filed November 2, 1983, specifically requesting relief from the April 13, 1983, order. The defendant architect renewed his objection to our granting of leave with a motion filed November 29, 1983. That motion was taken with the case for determination.

The timely filing of a notice to appeal is jurisdictional. (*Hale v. Ault* (1974), 24 Ill. App. 3d 10, 321 N.E.2d 151.) Where an appellant has failed to confer jurisdiction on this court by properly filing a notice of appeal, we are obliged to dismiss the action.

■ The rules promulgated by the supreme court provide for the filing of an amended notice of appeal. (94 Ill. 2d R. 303(c)(4).) However, an amendment specifying a part of the judgment not specified in the original notice of appeal may be made only within 30 days after expiration of the time for filing the original notice of appeal. (94 Ill. 2d R. 303(a)(3).)

> "After the expiration of the initial 30-day period for filing notice of appeal, and the additional 30-day safety-valve period allowed by Supreme Court Rule 303(e) [citation], the appellate court is without jurisdiction to permit further amendments of the notice of appeal." (*Brenkman v. Belmont Marketing, Inc.* (1980), 87 Ill. App. 3d 1060, 1062-63, 410 N.E.2d 500, 503.)

As the amended notice of appeal in the instant case was not filed within the time periods provided, we are compelled to agree with the defendant architect that leave to file the amended notice was improvidently granted. Accordingly, we believe the appeal against this defendant must be dismissed.

■ A primary issue raised by the plaintiffs on this appeal concerns the circuit court's reliance on the *Moorman* decision in dismissing the actions sounding in tort directed against the defendant builder and the defendant material supplier. Subsequent to the circuit court's decision, the *Moorman* rule was clarified and expanded upon with the decision in *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085. In that case it was determined that:

"*Moorman* and subsequent cases *** establish that economic losses are not recoverable in tort against a defendant where the injuries caused by that defendant relate directly to plaintiff's reasonable commercial expectations respecting the defendant's actions *and* where plaintiff has or had appropriate and adequate contract or warranty actions as against the defendant for such harm. In such circumstances, and where the injury is to the item supplied or produced by that defendant, contractual benefit-of-bargain expectations damages are the appropriate measure of recovery. However, the same economic losses are recoverable in tort, as against defendants who by their own negligence, as measured by traditional tort analysis, have caused the injuries and against whom no contract or warranty recovery is available. As to these defendants, when unconnected with the contract-warranty defendant, the harm caused by them is not related to the plaintiff's commercial expectations, but to traditional societal expectations and conduct." (*Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 606, 459 N.E.2d 1085, 1090-91.)

Viewing the facts of the case before us in light of the holding in *Ferentchak*, we must conclude that the counts sounding in negligence and strict liability directed against the builder, and the material supplier should not have been dismissed.

Again, following the rule in *Ferentchak* and *Moorman*, we conclude that the defendant landlord is contract-warranty defendant. Therefore, the circuit court's dismissal of the negligence count against that defendant was correct.

■ The builder and material supplier both assert that even if the allegations against them were improperly dismissed, the decision of the circuit court must nonetheless be affirmed since the plaintiffs have waived any alleged errors arising from the subsequent order directing verdicts on their behalf. Both the order dismissing the complaint against these two defendants and the order directing a verdict for the same defendants were enumerated as grounds for reversal in the plaintiffs' notice of appeal. However, only the dismissal order received comment in the plaintiffs' written argument before this court. The defendants correctly note that alleged errors unsupported by substantial argument are waived and will not be reviewed. (2 Ill. L. & Prac. *Appeal & Error* sec. 557 (1953).) This rule of appellate review is not applicable to the instant case, however, where the directed verdict order was based upon the prior dismissal order. Under these facts, where the error in the subsequent order was derived from the

error in the prior order, arguments directed to the ancestral misapplication of law, by relation, address the progeny as well.

■ The circuit court directed a verdict against the plaintiffs at the conclusion of the hearing on the constructive eviction action. The plaintiffs had sought damages in the form of lost profits as a result of the alleged constructive eviction. The circuit court's rationale for directing a verdict against the plaintiffs was based upon the speculative nature of the damages, *i.e.*, lost profits. It is hornbook law that lost profits are not a proper element of damages where proof of those profits is based on speculation or conjecture. However, absolute certainty of this element of damages is unattainable, and all that the law requires is that the evidence establish, with a fair degree of probability, a basis for the assessment of damages. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 281 N.E.2d 323.) Accordingly, we believe the proof of damages offered by the plaintiffs was sufficient to submit the plaintiffs' case of constructive eviction to the jury. The circuit court's action in directing a verdict was in error.

Other errors were raised concerning the exclusion of plaintiffs' evidence. The circuit court found the evidence insufficiently connected to the issues raised by the complaint to be relevant. However, on remand, with the introduction of sufficient connecting evidence, this evidentiary question is unlikely to recur. Accordingly, we express no opinion as to these alleged errors.

After carefully reviewing the written and oral arguments of counsel as well as the authorities cited therein, and for the reasons hereinabove set forth, we order the appeal against the defendant James B. Clarage & Associates dismissed; we reverse and remand the dismissal of the action based on negligence against Pasch & Sons Construction Company; we reverse and remand the dismissal of the actions based on negligence and strict liability against Alexander Lumber Company; we affirm the dismissal of the action based on negligence against Old Oak Town Center; and, we reverse the directed verdict on the constructive eviction action against Old Oak Town Center.

HEIPLE, J., concurs.

JUSTICE STOUDER, dissenting:

I agree with the majority that the proper cause of action of a tenant against his landlord is not a tort action sounding in negligence but an action based upon the lease agreement between the parties and the implied covenants recognized by law. I do not agree that the counts based upon negligence and strict liability against the construction

company, the architect and material supplier should have been allowed to proceed on a negligence theory. As I read *Moorman*, the recovery sought by this plaintiff is exactly the type of recovery which *Moorman* forbids. The *Moorman* case adopts as a definition for economic loss

> " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property***.' " *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 82.

In this case, plaintiff/lessee is claiming that the chemically treated beams caused the loss of business and a subsequent loss of profits at its restaurant because of the noxious odors coming from the beams. These losses fit the *Moorman* case's definition of purely economic loss precisely. Furthermore, the plaintiff alleges no other physical damage to either a person or property. *Moorman*, of course, goes on to deny recovery for purely economic loss in a tort action when the damage is to the product alone.

*Moorman* also distinguishes between sudden and dangerous occurrences and qualitative defects which are properly left to be remedied under the law of warranty. *Moorman*, speaking about the slow crack that grew in the steel band of the tank, stated:

> "This was not the type of sudden and dangerous occurrence best served by the policy of tort law that the manufacturer should bear the risk of hazardous products. Rather, like the factual situation in *Jones & Laughlin Steel*, and unlike that in *Cloud* and *Pennsylvania Glass*, the harm resulted from a qualitative defect relating to the purchaser's expectation in terms of the product's fitness to perform its intended function. ***
>
> Our conclusion that qualitative defects are best handled by contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above." (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 85-86.)

The defect complained of in this case certainly does not meet this sudden-and-dangerous requirement either.

I believe that *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, did nothing to clarify the *Moorman* rule. I expressed this belief in my dissent filed in the *Ferentchak* case, although my main contention in that dissent was that no duty was

owed to plaintiff. If we are going to use *Moorman's* definition of economic loss to decide whether or not to allow an action in tort in this district, we certainly cannot read the rule in *Moorman* to allow this action when the damages claimed fit exactly the definition of "economic loss" used by the supreme court in the *Moorman* case. Practically speaking, *Ferentchak* eviscerated the *Moorman* rule rather than expanded it, and in my opinion speaking of economic loss is now meaningless because we are now allowing recovery for disappointed commercial expectations, just what *Moorman* forbids. Possibly this is the path of the future, but at least I think we should admit that we are not going to follow *Moorman* rather than pretending to follow it and reaching an opposite conclusion.

Because the rules of *stare decisis* demand that we be bound by the decisions of the Illinois Supreme Court, I would have affirmed the circuit court of Will County and dismissed the counts against the architect, the construction company and the supplier sounding in tort.